James F. Pullan
vs.   No. 89268.
Lincoln Machine Company

July 13, 1933.

JOSLIN, J. Heard on defendant's motion for a new trial after verdict by the jury for plaintiff in the sum of $6539.11.

The case was brought to recover a bonus which the plaintiff claims is due him for the years commencing with 1923 and ending with 1931.

The defendant company is engaged in the machine and tool manufacturing business. In 1922 it was a close corporation, having but two stockholders: one McCloskey, who was president, and one McDevitt, who was treasurer. The plaintiff and McCloskey had known each other for a long time. There were two meetings between them at which two drafts of an agreement were submitted and rejected. Finally, the plaintiff and both McCloskey and McDevitt met at the company's shop and a contract was agreed upon and duly executed. By it the plaintiff was engaged as superintendent for an indefinite period of time. The company agreed to pay him annually "a bonus represented by 7% of the net earnings of the company". No mention is made of the weekly salary, but the parties agree that it was to be $75. The meaning of the expression "net earnings" used in the contract is uncertain and vague. The Jury were instructed that in view of this fact it was for them, under all the circumstances, to ascertain the meaning and the intent of the parties in the use of that term.

The regular salary which the officers were drawing during the term of the contract was $100 each per week. During each of the years they voted themselves large sums of money as additional salaries and during two years they also voted themselves large

sums of money for bonuses. This reduced the amount of the net earnings in the sums equal to these additional salaries and bonuses.

The plaintiff contends that the withdrawals of salaries and bonuses were improper and not as contemplated by the parties in their contract. The defendant contends that inasmuch as the contract is silent on the question of salaries and bonuses which the officers might draw, that they had the right to draw such sums as they pleased, even if the effect thereof is to reduce the net earnings pro tanto. The question as to whether these withdrawals were proper or otherwise was left to the jury. They decided in favor of the defendant on this issue.

The defendant next contends that the 1922 contract was terminated by mutual oral agreement between the company and the plaintiff made in July, 1929. The plaintiff denies this.

For each of the years 1923, 1924 and 1926, the defendant paid the plaintiff a sum of money as a bonus. According to its own books, giving effect to salaries and bonuses as legitimate expenses, the sums thus paid were considerably less than the plaintiff was entitled to. The defendant according to its own records, made more net earnings in 1926 and 1928, but no bonus payment was made to the plaintiff.

McCloskey died early in 1929. Shortly thereafter, McDevitt became the sole stockholder. At that time the company admittedly owed the plaintiff $955.55. McDevitt claims that in July or August, 1929, the company and the plaintiff entered into an oral agreement by which the plaintiff was to release all claim to the said sum of $955.55, the salary of the plaintiff was to be increased by $20 per week, the defendant was to pay insurance premiums on the life of Pullan, and the 1922 contract was to be cancelled. The plaintiff denies this oral agreement. He states that he was given more responsibility, in consideration of which he received this $20 per week increase in salary and the said insurance premiums were paid for several years. The burden to prove this new agreement was upon the defendant. We do not believe that Pullan was made general manager, but we do believe that he was given increased responsibilities. The company was then doing a greatly increased business and it needed Pullan just at that time. Indulging for the moment in the realm of probability, it is our opinion that McDevitt may have had some indefinite idea in his own mind that he was effecting some change in the then existent arrangement with Pullan, but we do not believe that it took the definite form of an agreement cancelling out the old contract. There was ample evidence to warrant the jury in finding for the plaintiff on this phase of the case. The effect of this finding is that the 1922 contract continued in effect until the parties severed their relations in April, 1932.

The defendant pleaded the Statute of Limitations as to those sums of money which were due from it to the plaintiff more than six years prior to the commencement of this action. The plaintiff replied, alleging an acknowledgment and a new promise. There unquestionably were conversations between the plaintiff and McCloskey in 1927, 1928 and 1929, in which McCloskey definitely acknowledged the obligation to be an existing debt. The amount thereof was undetermined, but the debt itself was definite. This bars the statute.

> See *La France* vs. *Moquin*, 49 R. I. 151, and *Lee* vs. *Wyse*, 35 Conn., 384.

In 1927 McCloskey told the plaintiff: "I am going to have an audit of the books made. You will get all and every cent that is coming to you." Again, in February, 1929, McCloskey

told plaintiff that the books were being audited and that every thing would be settled to his entire satisfaction. The attending circumstances and unusual relations between Pullan and McCloskey made this testimony convincing.

The schedule of profits or losses of the defendant for the years 1923 to 1931, both inclusive, as disclosed by its own books, showed total net earnings of $80,301.50. A bonus equal to 7% on this amount, together with interest thereon, computed separately on the profits of each year from the first day of January next after the year in which the profits were earned, accounts for the amount of the verdict.

As no time for payment was specified in the agreement, the defendant had a reasonable time after the end of each year to make payment and interest should not be computed except from the expiration of said reasonable time. From all the attending circumstances, we believe that April 1st may fairly be considered as the date when payment should have been made. Therefore, interest is allowable from said date only. A recomputation of the interest makes the verdict excessive by $76.83. In the opinion of the Court, except for said excess, the verdict does justice between the parties.

If the plaintiff, within five days, remits so much of said verdict as exceeds $6,462.28, then a new trial is denied; otherwise it is granted.

For plaintiff: Hinckley, Allen, Tillinghast, Phillips & Wheeler.

For defendant: Comstock & Canning.